<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WATSON MUSIC GROUP, LLC D/B/A QUADRASOUND MUSIC, | : : : : | **Civil Action No. 24-10582 (SRC)** |
| Plaintiff, | : : | |
| v. | : : : | **OPINION & ORDER** |
| FLAVORGOD LLC AND SHREDZ SUPPLEMENTS LLC, | : : : | |
| Defendants. | : | |

<u>**CHESLER**</u>, District Judge

      This matter comes before the Court on a motion for default judgment, pursuant to Federal Rule of Civil Procedure 55(b), by Plaintiff Watson Music Group, LLC d/b/a Quadrasound Music ("Quadrasound" or "Plaintiff") as to Defendants FlavorGod LLC ("FlavorGod") and Shredz Supplements LLC ("Shredz") (collectively, "Defendants"), (Dkt. No. 12), (the "Motion for Default"). For the reasons that follow, the Motion for Default will be **GRANTED** in part and **DENIED** in part.

**I.    PROCEDURAL HISTORY**

      On November 19, 2024, Plaintiff filed a complaint ("Complaint") asserting one claim against both Defendants for direct copyright infringement under 17 U.S.C. § 501. (Dkt. No. 1 ("Compl.") ¶¶ 40–47.) The Complaint also seeks an award of actual or, upon Plaintiff's election, statutory damages, an order enjoining Defendants from future infringing uses of Plaintiff's works, an award of attorneys' fees and costs, and pre-judgment interest. (<u>Id.</u> at 6–7.)

On February 18, 2025, Plaintiff filed a motion for an enlargement of time and for an order authorizing alternate service of process on Defendants ("Alternate Service of Process Motion"). (Dkt. No. 5.) Plaintiff's Alternate Service of Process Motion explained Plaintiff's efforts to serve each Defendant and sought the Court's authorization to serve Defendants via the email addresses listed on Defendants' active websites and serve Defendant Shredz via certified mail to an address Plaintiff found for Shredz in the records of the United States Patent and Trademark Office. (See generally id.) On February 19, 2025, Magistrate Judge Cathy L. Waldor granted Plaintiff's Alternate Service of Process Motion. (Dkt. No. 6.) Plaintiff filed two certificates of service the following day, certifying that Defendant FlavorGod was served a copy of the Summons, Complaint, and Exhibits via email, (Dkt. No. 7), and Defendant Shredz was served a copy of the Summons, Complaint, and Exhibits via email and certified mail, (Dkt. No. 8). To date, neither Defendant has appeared in the action.

On April 8, 2025, Plaintiff requested the Clerk of the Court to enter the default of Defendants for failure to answer, move, or otherwise plead. (Dkt. No. 9.) The Clerk entered an entry of default on the docket as to Defendants FlavorGod and Shredz that same day. After seeking an extension of time to move for the entry of default, Plaintiff filed its Motion for Default against Defendants on July 14, 2025. (Dkt. No. 12 ("Mot.").)

Through the Motion for Default, Plaintiff primarily seeks (1) an entry of default judgment in favor of Plaintiff against Defendants; (2) a statutory damages award of $10,000 under 17 U.S.C. § 504(c)(1); (3) an award of Plaintiff's reasonable attorneys' fees and costs in the amount of $5,725.50 under 17 U.S.C. § 505; (4) an award of post-judgment interest under 28 U.S.C. § 1961; and (5) an order enjoining Defendants from any infringing use of any of Plaintiff's works under

17 U.S.C. § 502(a).  (Id. at 15.)  Plaintiff also seeks that the Court maintain jurisdiction over any matter pertaining to its judgment and seeks any other relief the Court deems just.  (Id.)

## II.     FACTUAL BACKGROUND

This dispute arises out of Defendants' alleged unauthorized copying, storing, and/or making available of Plaintiff's copyrighted material on Defendants' Facebook account.  (Compl. ¶¶ 3–4.)

Plaintiff owns the rights to certain musical works that it licenses for commercial use.  (Id. ¶ 2.)  In 1996, "Jay McGown, Nathaniel Orange p/k/a Lemonhead, and Van Bryant p/k/a 69 Boyz authored a musical work titled 'Space Jam'" (the "Musical Work").  (Id. ¶ 11.)  The Musical Work was registered with the United States Copyright Office ("USCO") on May 1, 1997 under Registration No. PA-844-835 and is an "original, creative work."  (Id. ¶¶ 12, 41.)  Plaintiff acquired all rights to the Musical Work by way of written agreement on July 30, 2019.  (Id. ¶ 13.)

Defendants own and operate a social media account on Facebook named "@ShredzSupplements" (the "Account").  (Id. ¶ 3.)  Plaintiff alleges that the Account is associated with Defendants because Defendant FlavorGod "is listed as the responsible party for the Account" and the Account is named for Defendant Shredz.  (Id. ¶¶ 16–18.)  Plaintiff alleges that Defendants "have exclusive access to post content" on the Account and that Defendants use the Account to promote their business and brands "whereby Defendants financially benefit[]."  (Id. ¶¶ 19–20.)

On or around October 16, 2015, Defendants posted a "discernable excerpt of the Musical Work on the Account as part of a social media post."[1]  (Id. ¶ 14.)  Plaintiff alleges that it "first

---

[1]   Plaintiff alleges that the social media post was available at the following URL: https://www.facebook.com/watch/?v=1057750480926316, but that URL now displays a notice that "This Video Isn't Available Anymore" and states, "The link may be broken or the video may have been removed.  You can explore more videos or try logging into facebook.com and then visiting the link again."

observed and actually discovered the Infringement on March 13, 2024." (Id. ¶ 15.) Attached to the Complaint is a "screengrab of the Account including the post where the Musical Work was made available." (Id. ¶ 14.) The screengrab shows a URL address of "https://www.facebook.com/watch/?v=1057750480926316" in the top left-hand corner. The screengrab also shows what appears to be an October 16, 2015 video post from a "Shredz Supplements" account titled, "The ULTIMATE Butt-Builder!" (Id., Ex. 1.) The caption of the video includes the following text: "Build Those Glutes FAST! By Shredz and Ainsley Rodriguez." (Id.) The video appears to be 14 seconds long and has 877 likes, 76 comments, and 38,000 views as of the time Plaintiff took the screenshot of the Account webpage. (Id.) There is a comment on the video that says, in part, "our song![,]" but there is no other indication in the exhibit as to the audio used in the 14-second clip. (See id.)

Plaintiff alleges "upon information and belief" that Defendants "copied, stored, [and] distributed without license or permission" Plaintiff's Musical Work on the Account "to be performed publicly by means of a digital audio transmission," which infringed Plaintiff's exclusive rights in the copyrighted work. (Compl. ¶ 21.) Plaintiff did not license Defendants the right to use the Musical Work, nor has it assigned any exclusive rights in the copyright to Defendants. (Id. ¶ 42.) Plaintiff alleges that Defendants' infringement "is an exact copy of a discernable portion of Plaintiff's Musical Work that was copied and made available by Defendants for public performance on the Account." (Id. ¶ 22.)

Plaintiff also alleges that upon information and belief, Defendants took an active role in creating and posting content to the Account as well as monitoring the content on the Account. (Id. ¶¶ 26–28.) Plaintiff alleges upon information and belief that Defendants received a financial benefit attributable to their infringing use of Plaintiff's Musical Work in the October 16, 2015

-4-

video and that the infringement increased traffic to the Account, which resulted in Defendants realizing an increase in the revenues generated by their services. (Id. ¶¶ 29–30.) Plaintiff alleges that many people listened to the unlawful copy of the Musical Work on Defendants' Account, which "harmed the actual market for the Musical Work." (Id. ¶¶ 31, 33.)

On March 29, 2024, Plaintiff's counsel served Defendants with a letter seeking to address the issues identified in the Complaint concerning Defendants' infringement of Plaintiff's Musical Work. (Id. ¶ 35.) Plaintiff's counsel served Defendants with a second letter on June 4, 2024 seeking to address the same issues contained in the first letter. (Id. ¶ 36.) Defendants did not respond to either letter, which led to the filing of this lawsuit. (Id. ¶ 37.) Plaintiff alleges that it has been substantially harmed by Defendants' infringement.[2]

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter default judgment against a properly served defendant who fails to file a timely responsive pleading. In the Third Circuit, "the entry of a default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). Before granting a default judgment, the district court must determine: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 683 (D.N.J. 2015) (citation omitted). "Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount

---

[2] Though the Complaint contains an allegation that Defendants continue to infringe Plaintiff's Musical Work, the Court notes that the link to the infringing video no longer exists as previously discussed.

of damages." Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535–36 (D.N.J. 2008) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

IV. **DISCUSSION**

  **A. Jurisdiction is Proper.**

The Court has both personal jurisdiction over Defendants and subject matter jurisdiction over this dispute. The record reveals that Defendants are New Jersey-based limited liability companies, (Compl. ¶¶ 6–7), and were served by alternate means of service authorized by Magistrate Judge Waldor, (see Dkt. Nos. 5–8). As such, the Court has personal jurisdiction over Defendants. The Court has original subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

  **B. The Unchallenged Facts Present A Legitimate Cause of Action for Copyright Infringement Under 17 U.S.C. § 501.**

The Court is next tasked with determining whether the undisputed facts of the Complaint allege a legitimate claim for direct copyright infringement. To prevail on a direct copyright infringement claim, a plaintiff must demonstrate: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).

In proving the first element is met, Plaintiff alleges that the Musical Work was registered with the USCO on May 1, 1997 under Registration No. PA-844-835 and that on July 30, 2019, Plaintiff acquired all rights to the Musical Work under a written agreement. (Compl. ¶¶ 12–13.) The Court takes judicial notice that Copyright Registration No. PA-844-835 is for a music work titled "Space Jam" and that the Copyright Claimant listed on the USCO's public records system is

"Quadrasound Music & Warner-Tamerlane Publishing Corporation."[3] See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). By virtue of their default, Defendants forfeited their ability to challenge Plaintiff's registration or ownership of a valid copyright in the Musical Work and the Court therefore finds the first element is met.

Regarding the second element, the Complaint contains uncontested allegations that Defendants posted a video to their Account using an "exact copy" of an excerpt of Plaintiff's Musical Work without a license or permission to do so. (Compl. ¶¶ 14, 16–22.) Though the Court cannot determine for itself whether the video Defendants posted to its Account used an excerpt from Plaintiff's Musical Work because the post has since been removed and Exhibit 1 to the Complaint does not contain information regarding audio, the Court must nevertheless accept as true this factual allegation for purposes of deciding liability on Plaintiff's Motion for Default. See Comdyne I, 908 F.2d at 1149. Given that Defendants did not have a license to use the Musical Work from Plaintiff, their posting a video to social media using an excerpt of the Musical Work constitutes an infringement of Plaintiff's exclusive copyrights in the Musical Work. See, e.g., UMG Recording, Inc. v. Escape Media Grp., Inc., 2014 WL 5089743, at *19 (S.D.N.Y. Sept. 29, 2014) ("Courts have found that the unauthorized reproduction[,] distribution, and public performance of sound recordings via the internet violates the Copyright Act."); UMG Recordings, Inc. v. Vital Pharms., Inc., 2022 WL 2670339, at *7 (S.D. Fla. July 11, 2022) (same).

The Court finds that Plaintiff sufficiently stated a claim for direct copyright infringement.

---

[3] See U.S. Copyright Off., Registration Record PA0000844835, https://publicrecords.copyright.gov/detailed-record/voyager_11662050. The Court notes, however, that Exhibit 1 to the Declaration of Mark Watson in support of Plaintiff's Motion for Default is not a copy of the certificate of registration for the musical work at issue here, but rather it is for a different musical work. (See Dkt. Nos. 12-7 & 12-8.) Nevertheless, Plaintiff's copyright ownership in the Musical Work is supported by a public government record.

### C. The Entry of Default Judgment is Proper.

In determining whether the entry of default judgment is proper, the Court must consider "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." Matos, 133 F. Supp. 3d at 686 (quoting Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008)). Defendants failed to proffer any defense to Plaintiff's claims and the Complaint does not suggest the existence of any meritorious defense. Although the allegedly infringing video is no longer available on Defendants' Account, Plaintiff has no other means of seeking damages for the harm caused by Defendants, and the Court thus finds that Plaintiff would be prejudiced in the absence of the entry of a default judgment. Finally, "[c]ulpable conduct is conduct that displays 'willfulness' or 'bad faith' and amounts to 'more than mere negligence.'" Barrett v. Tri-Coast Pharmacy, Inc., 518 F. Supp. 3d 810, 830 (D.N.J. 2021) (quoting Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017)). "[I]f a defendant fails to answer, move, or otherwise respond to an action, culpability will be presumed." Id. As Defendants failed to answer or otherwise respond to this action, culpability is presumed.

All three factors therefore weigh in favor of granting Plaintiff's Motion for Default against Defendants.

### D. Damages.

Finally, the Court must determine the appropriate remedies and amount of damages to award Plaintiff.

### 1. Statutory Damages

Plaintiff seeks an award of statutory damages in the amount of $10,000 against Defendants "as compensation for Defendants' willful copyright infringement and as a deterrence to further infringement." (See Mot. at 8–9.)

Section 504 of the Copyright Act provides:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). In cases where the copyright owner proves that the infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Id. § 504(c)(2). If the court finds that "such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." Id.

"Courts have wide discretion in determining statutory damages." Broadcast Music, Inc. v. Crocodile Rock Corp., 634 F. App'x 884, 885 (3d Cir. 2015). "Statutory damages serve the dual purpose of punishing and deterring the infringer while compensating the copyright holder for the infringement." Malibu Media, LLC v. Tsao, 2016 WL 3450815, at *4 (D.N.J. June 20, 2016). "However, when liability is established through default judgment rather than the merits, courts routinely award the minimum statutory damages amount." Id. (listing cases); see also Fonovisa, Inc. v. Merino, 2006 WL 3437563, at *2 (D.N.J. Nov. 27, 2006) ("In default judgments in copyright infringement cases, federal courts routinely award minimum statutory damages."). "The starting point for [a] statutory damages analysis in a copyright action is the minimum, $750.00 per

infringement, and it is up to the court to decide whether to increase that figure based on the Defendant's conduct." Malibu Media, 2016 WL 3450815, at *4.

Plaintiff has requested to recover statutory damages in the amount of $10,000. Given that the amount requested in statutory damages is well beyond the statutory minimum, the Court considers the following factors in determining an appropriate amount of statutory damages: "(1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental." Kennedy v. Creditgo, LLC, 2015 WL 7760181, at *4 (D.N.J. Dec. 2, 2015) (quoting Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F. Supp. 458, 465 (E.D. Pa. 1987)). And, as stated, the Court need not "accept the moving party's legal conclusions or allegations relating to the amount of damages" as true. See Gordashevsky, 558 F. Supp. 2d at 535–36.

Given that the statutory damages are requested through a default judgment motion, the Court has no information on expenses saved nor profits reaped by Defendants. The Court does note, however, that the Complaint only contains conclusory allegations that "Defendants have received a financial benefit" from the alleged infringement through an "increase in the applicable revenues generated by its services," and there are no allegations as to what those services are nor what the financial benefit could have been. (Compl. ¶¶ 29–30.) Indeed, most of Plaintiff's allegations regarding "Defendants' Infringing Activity" are plead "[u]pon information and belief." (See id. ¶¶ 14–39.) The Third Circuit has explained that pleading "upon information and belief" is permissible "'[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make

their theoretically viable claim plausible.'" See McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)). While true that information regarding Defendants' expenses saved and profits reaped are likely within Defendants' control, Plaintiff's allegations based upon information and belief do not establish an appropriate basis for awarding Plaintiff damages above the statutory minimum.

The Court also lacks any information about revenues lost by Plaintiff. Other courts in this District use the plaintiff's alleged annual licensing fee as a means to determine the appropriate amount of statutory damages to award under 17 U.S.C. § 504(c)(2). See, e.g., Prepared Food Photos, Inc. v. David & Sons Meats LLC, 2024 WL 912454, at *6 (D.N.J. Mar. 4, 2024); Cochran v. Dipset Couture LLC, 2024 WL 658612, at *4 (D.N.J. Feb. 15, 2024). Here, however, Plaintiff does not allege facts related to its monetary losses from Defendants' unlicensed use of its Musical Work other than the conclusory allegation that Defendants' use "harmed the actual market for the Musical Work," which the Court need not accept as true. (See Compl. ¶ 33.) This factor heavily weighs in favor of granting Plaintiff the statutory minimum of $750.00 because there is no basis for the Court to determine an appropriate amount of damages in light of the fact that Plaintiff has not plead lost profits.

Regarding the remaining two factors, the Court notes the strong interest in ensuring the integrity of the copyright laws, but also notes that courts in this District have found that "willful infringement does not automatically give rise to heightened statutory damages." See Kennedy, 2015 WL 7760181, at *5.

While the Court accepts as true Plaintiff's allegations that Defendants used an excerpt of Plaintiff's Musical Work in a video posted to Defendants' Account, in the absence of a continuing

-11-

infringement and other evidence to demonstrate the infringement here was "especially egregious," the Court finds that the statutory minimum of $750.00 is a sufficient award under the circumstances. See, e.g., id. at *5–6; Lee v. Karaoke, 2024 WL 1898240, at *3 (D.N.J. May 1, 2024) (awarding $750.00 in statutory damages for each individual copyrighted song the defendants used at their karaoke clubs). The Court does not believe an award of $10,000—thirteen times the statutory minimum—bears a discernable relation to the harm Plaintiff suffered here. Accordingly, Plaintiff is awarded $750.00 for the infringement and finds this award to be appropriate, reasonable, and will deter future infringements from Defendants as well as compensate Plaintiff.

### 2. Attorneys' Fees and Costs

Under 17 U.S.C. § 505, a district court may, at its discretion, award costs and reasonable attorneys' fees to a prevailing party in a copyright infringement suit. Plaintiff requests $5,142.50 in attorneys' fees for work related to drafting the Complaint, the Alternate Service of Process Motion, and the Motion for Default. (See Mot. at 14 & Dkt. No. 12-4.) Plaintiff also requests $583.00 in costs related to the filing fee and service of process fee. (Mot. at 14.) Plaintiff's counsel submitted a declaration itemizing the time spent on this case and other costs associated with the case (the "Sanders Declaration"). (Dkt. Nos. 12-2 & 12-4.)

Upon consideration of Plaintiff's arguments in favor of awarding attorneys' fees in the Motion for Default and the Sanders Declaration, the Court will deny Plaintiff's request for attorneys' fees in this case. Section 505 of the Copyright Act "grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case." Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 203 (2016). In considering the circumstances of this case, the Court finds that the requested amount of $5,142.50 is disproportionate to the amount of time that could have reasonably been spent working on this case given the fact that the Complaint appears to be a cookie cutter complaint that the same law firm has filed in a number of other federal courts across the

country.[4] The Court is also not satisfied that Plaintiff's request is reasonable because a managing partner billing $895.00 an hour should not have spent even one hour on this copy-and-paste case. The Court cannot conclude that the attorneys' fees request is reasonable nor warranted in this case.

The Court does, however, find that awarding Plaintiff costs of suit is appropriate on the entry of default judgment. See Fonovisa, Inc., 2006 WL 3437563, at *2. In accordance with 17 U.S.C. § 505, the Court awards Plaintiff full costs of suit in the amount of $583.00.

### E. Permanent Injunction

In the conclusion section of its Motion for Default, Plaintiff also asks the Court to enjoin Defendants from any infringing use of any of Plaintiff's work under 17 U.S.C. § 502(a). (Mot. at 15.)

A district court is permitted to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In deciding whether to grant Plaintiff's request, the Court must consider whether: "(1) [Plaintiff] has shown actual success on the merits; (2) [Plaintiff] will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to [Defendants]; and (4) the injunction would be in the public interest." Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).

---

[4] See, e.g., Watson Music Grp., LLC d/b/a Quadrasound Music v. Borshoff, Inc., No. 23-cv-02117 (S.D. Ind. 2023), Dkt. No. 1; Watson Music Grp., LLC d/b/a Quadrasound Music v. Brand Knew LLC, No. 23-cv-09625 (C.D. Cal. 2023), Dkt. No. 1; Watson Music Grp., LLC d/b/a Quadrasound Music v. CPPM Leasing LLC, No. 23-cv-80886 (S.D. Fla. 2023), Dkt. No. 1; Watson Music Grp., LLC d/b/a Quadrasound Music v. Caesars Ent., Inc., No. 23-cv-04502 (E.D. Pa. 2023), Dkt. No. 1; Watson Music Grp., LLC d/b/a Quadrasound Music v. Ballislife, Inc., No. 23-cv-01673 (C.D. Cal. 2023), Dkt. No. 1; Watson Music Grp., LLC d/b/a Quadrasound Music v. Timber Rattlers Give Back, Inc. d/b/a Wisconsin Timber Rattlers, No. 23-cv-01133 (E.D. Wis. 2023), Dkt. No. 1.

Though Defendants' default prevents the Court from deciding the case on the merits, the Court has already found that Plaintiff pled facts to support a default judgment against Defendants and thus, Plaintiff has shown success on the merits. Plaintiff has also demonstrated irreparable harm in that Defendants' continued infringement of Plaintiff's copyrighted works could harm Plaintiff's "potential market for the Musical Work." (Compl. ¶ 34.) The granting of the permanent injunction against Defendants would result in no harm to Defendants as it will only prohibit Defendants from engaging in future, unlawful infringing behavior. Finally, "the prevention of copyright infringement serves the public interest." See Malibu Media, 2016 WL 3450815, at *5. Because Plaintiff satisfies all four requirements, the Court will enter a permanent injunction against Defendants.

*   *   *

For these reasons,

**IT IS** on this 28th day of August, 2025

**ORDERED** that Plaintiff's Motion for Default Judgment against Defendants FlavorGod and Shredz, (Dkt. No. 12), is **GRANTED**; and it is further

**ORDERED** that Plaintiff is awarded a judgment against Defendants FlavorGod and Shredz, collectively, in the amount of $750.00; and it is further

**ORDERED** that Plaintiff's request for attorneys' fees is **DENIED**; and it is further

**ORDERED** that Plaintiff's request for costs in the amount of $583.00 is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request for post-judgment interest is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request for a permanent injunction is **GRANTED** and Defendants FlavorGod and Shredz, and any of their officers, agents, members, employees, representatives, parents, subsidiaries, affiliates, divisions, successors and assigns and all those persons in active concert or participation with any of them who receive actual notice of this judgment, shall be permanently enjoined from any infringing use of any of Plaintiff's copyrighted works under 17 U.S.C. § 502(a); and it is further

**ORDERED** that the Court shall retain continuing jurisdiction over the parties to this final order and over the subject matter of the action for the purposes of interpreting and enforcing the terms of this final order.

  *s/ Stanley R. Chesler*
  STANLEY R. CHESLER, U.S.D.J.